IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DOUGLAS GRECO, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:24-CV-1061-RP |
| CITY OF AUSTIN, TEXAS, et al., | § § | |
| Defendants, | § § | |

## ORDER

Before the Court is Plaintiffs Douglas Greco, Ramon Duran, and Doug Greco for Austin Mayor's ("Plaintiffs") Motion for Preliminary Injunction (Dkt. 2). Defendants City of Austin, Texas, Deborah Thomas, and T.C. Broadnax ("Defendants") filed a response, (Dkt. 13), and Plaintiffs replied, (Dkt. 14). The Defendants also moved to dismiss, (Dkt. 11), and the Plaintiffs responded, (Dkt. 16). The Defendants filed an advisory to the Court as to the ongoing Austin Ethics Commission proceeding. (Dkt. 15). Having considered the parties' briefs, the evidence, and the relevant law, the Court finds that the Plaintiffs' motion for preliminary injunction should be **DENIED** and the Defendants' motion to dismiss should be **GRANTED** without prejudice.

## I. BACKGROUND

Campaign fundraising for candidates for Mayor of Austin and candidates for City Council is regulated by Article III, §§ 7 & 8 of the City Charter and by Chapter 2-2 of the Code of Ordinances. (Dkt. 13-1). Article III, § 8(A)(3) limits funding that a candidate for Mayor or City Council may accept, in the aggregate, "from sources other than natural persons eligible to vote in a postal zip code completely or partially within the Austin city limits." That limit is currently set at $47,000 for a general election and $31,000 for a runoff election. (Dkt. 2-6). It also sets a base limit on the amount a candidate may accept per contributor per election. Art. III, § 8(A)(1). That limit is currently set at

1

$450 per contributor per election. (Dkt. 2-6). These regulations are enforced by the Austin Ethics Commission ("ERC") (among other entities) pursuant to procedures set forth in Chapter 2-7 of the Code of Ordinances. (Dkt. 2-5).

The City of Austin has enacted criminal penalties for violating Article III, § 8's limitations. Under City Code § 2-2-5, "a person who knowingly violates … a provision of City Charter Article III, Section 8 (Limits on Campaign Contributions and Expenditures) commits a Class C misdemeanor punishable … by a fine not to exceed $500. Each expenditure, contribution, or other action in violation of this chapter constitutes a separate offense."

Under the procedures and rules of City Code §§ 2-7, the ERC has duties to enforce campaign finance rules. After a complaint is filed, the Chair determines whether it has jurisdiction. *Id.* § 2-7-41(H)(1). Then, the ERC convenes a preliminary hearing to determine whether there are reasonable grounds to believe that a violation has occurred. *Id.* The ERC is to dismiss a case if they do not find reasonable grounds to believe a violation has occurred. *Id.* § 2-7-44(D), (E). At a preliminary hearing, parties give statements under oath and are allowed counsel. *Id.* § 2-7-44(A), (C). Throughout the process, *ex parte* communications are forbidden. *Id.* § 2-7-43.

If the ERC finds reasonable grounds to find a violation occurred, the ERC then holds a final hearing. City Code § 2-7-44(F). The parties are required to attend the final hearing. *Id.* § 2-7-45(C). At a final hearing, the ERC is authorized to "subpoena or request witnesses to attend or testify, administer oaths and affirmations, take evidence, and subpoena or request the production of books, papers, records, or other evidence needed for the performance of the commission's duties or exercise of its powers, including its duties and powers of investigation." *Id.* § 2-7-46(A). The ERC makes its final decision by a preponderance of credible evidence in the record. *Id.* § 2-7-45(D). Finally, it issues a written finding, which it sends to the city clerk. *Id.* § 2-7-45(E).

If the ERC "determines that a violation" of Article III, § 8 of the City Charter "has probably occurred," it "may recommend that the city attorney prosecute the violation," "request the appointment of a special prosecutor," and/or issue "a letter of admonition, a reprimand, or a letter of censure to a respondent." City Code § 2-7-49. The ERC may publish its letters of "notification" or "admonition" sanctioning a respondent for violating a campaign finance provision. *Id.* § 2-7-49(F).

Plaintiffs challenge the campaign fundraising aggregate limitation in Article III, § 8 of the city Charter because, they argue, Plaintiff Douglas Greco ("Greco") is prevented from collecting additional out-of-state donations (having already neared the aggregate limit), and because Plaintiff Ramon Duran ("Duran") is prevented from making further donations, as Plaintiff Doug Greco for Austin Mayor, Greco's campaign, cannot accept them. Greco announced his candidacy for Mayor of Austin on February 5th, 2024, and filed his candidacy with the City of Austin. (Dkt. 2, at 2-3). As a mayoral candidate, his campaign fundraising is subject to the limitations in Article III, § 8. Plaintiff Ramon Duran ("Duran") is a contributor to Greco's campaign who resides in San Antonio, outside the "inside-Austin" zip codes, and is therefore subject to the aggregate limitation. (Dkt. 2-9). Duran has already donated $250, but Greco's campaign cannot accept more donations from Duran, due to having already collected out-of-state fundraising at or nearing the $47,000 cap. (Dkt. 2, at 9, 15-16). Together, Plaintiffs argue that this limitation frustrates their First Amendment rights.

An enforcement proceeding about Greco's campaign fundraising is ongoing before the ERC. (Dkt. 15). On July 31, 2024, a citizen, Betsy Greenberg, filed ethics charges with the ERC alleging that Greco had accepted and disclosed donations from zip codes outside of those completely or partially within the Austin city limits, beyond the aggregate limit on out-of-Austin donations prescribed in Article III, § 8(A)(3). (*See* Dkt. 2-7). On Friday, September 6, 2024, Assistant City Attorney Caroline Webster sent Greco a "Notice of Preliminary Hearing before the City of

3

Austin Ethics Review Commission," informing Greco that the ERC's preliminary hearing on the complaint would proceed on September 24, 2024. (*See* Dkt. 2-8). The ERC conducted its preliminary hearing on September 26, 2024, and set the matter for a final hearing on October 23, 2024. (Dkt. 15).

## II. LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Before reaching the preliminary injunction factors, a district court considers the threshold inquiry of the application of *Younger v. Harris*, 401 U.S. 37 (1971). *See Daves v. Dallas County*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc).

Under *Younger*, a federal court must abstain from hearing and deciding constitutional challenges to state or local governmental action where federal judicial action would intrude on state- and local-level enforcement of laws.[1] More specifically, *Younger* abstention applies in three "exceptional categories of state proceedings: ongoing criminal prosecutions, certain civil enforcement proceedings akin to criminal prosecutions, and pending civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Google, Inc. v. Hood*, 822 F.3d 212, 222 (5th Cir. 2016) (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78-79 (2013)). If a proceeding falls into one of those three categories articulated in *Sprint*, a court next considers, before invoking *Younger*, whether there exists "(1) an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) . . . provides an adequate

---

[1] As an initial matter, *Younger* can require abstention to civil enforcement proceedings at the municipal level, enforcing local laws. *See, e.g., San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1090 (9th Cir. 2008) (election commission); *Helms Realty Corp. v. City of New York*, 820 Fed. Appx. 79 (2d Cir. 2020) (building code); *Moore v. City of Asheville*, 396 F.3d 385 (4th Cir.) (noise ordinance), cert. denied, 546 U.S. 819 (2005); *McCone v. City of Orlando*, 497 Fed. Appx. 864 (11th Cir. 2012) (parking laws).

opportunity to raise federal challenges." *Id.* If *Younger* applies, the relief required is "dismissal" of a federal case in which declaratory and injunctive relief are sought. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973).

### III. DISCUSSION

The parties dispute whether the ongoing proceeding before the ERC adjudicating a possible campaign finance violation by Greco mandates *Younger* abstention and warrants dismissal. Analyzing each factor in turn, the court finds that it does, requiring dismissal of the case without prejudice.

#### A. Existence of Ongoing Civil Enforcement Proceeding Akin to Criminal Prosecution

To the first consideration, *Younger* requires abstention where "noncriminal" and "civil enforcement proceedings" are ongoing that are "akin" to criminal prosecutions in that they are "initiated to sanction the party challenging the state action[] for some wrongful act." *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78-79 (2013). The ERC has jurisdiction granted to it by the City of Austin to enforce its campaign finance laws. It has a process set out in local laws providing for it to assess, investigate, and reprimand a potential violation of campaign finance laws. *See generally* City Code §§ 2-7. Under this first stage of the inquiry, the court finds the ERC proceeding is a civil enforcement proceeding, akin to a criminal prosecution, because it has independent authority to "sanction" the party "for some wrongful act." *Sprint*, 571 U.S. at 79.

Plaintiffs agree that the role of the ERC is to "enforce[]" Article III, § 8(A) of the city charter, (Dkt. 2, at 2.; Dkt. 16, at 4-5), but argue primarily that an ERC proceeding is not "akin to a criminal prosecution in important respects" because its enforcement authority does not include beginning a criminal prosecution. (Dkt. 16, at 7). Here, *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, where the Supreme Court found *Younger* abstention required during a state bar ethics commission proceeding, is instructive. 457 U.S. 423, 436 (1982). The powers of the ethics committee the Court considered in *Middlesex* compared to the powers of the ERC: The committee

5

had the jurisdiction to "ultimately dismiss the complaint, issue a private letter of reprimand, or forward a presentment to" a statewide Disciplinary Review Board. *Id.* at 423. Here, too, the ERC has the power to issue "a letter of admonition, a reprimand, or a letter of censure to a respondent." City Code § 2-7-49. And in *Middlesex*, the committee in question was required to have the state Supreme Court review all its disciplinary actions except for "the issuance of private letters of reprimand," which it could issue in its discretion. *Id.* at 436 n. 15. In other words, the only sanction that the ethics commission could independently issue was a formal reprimand, and the *Middlesex* court nevertheless found the ethics commission proceeding triggered *Younger* abstention. As such, the Court finds that the ERC has independent authority to "sanction" a party, *Sprint*, 571 U.S. at 79, because it can issue a reprimand or finding of a violation.

Plaintiffs also suggest that to trigger *Younger* abstention, the proceeding must be "initiate[d]" by a "state actor." (Dkt. 16, at 10). That overstates the holding of *Sprint*, which stated, rather, that "a state actor is *routinely* party to the state proceeding" warranting *Younger* abstention and "*often* initiates the action." *Sprint*, 571 U.S. at 79 (emphasis added). Regardless, based on Austin's City Code, the ERC does not act merely to adjudicate the private dispute of one party versus another, as was the case in *Sprint*. *Id.* at 70. Rather, the ERC has independent "duties" and "powers" to investigate a potential violation of the law, including by issuing subpoenas and taking witnesses. City Code § 2-7-46(A). Similarly, in *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1090 (9th Cir. 2008), the court found *Younger* abstention warranted over an election commission's "investigation" into whether certain activities supporting a candidate "violated the contribution limits" in that city's campaign finance code. This was their holding even though the investigation began, as here, "[i]n response to a citizen complaint filed." *Id.*

Finally, Plaintiffs cite a case which also considered a potential election law violation, *Mulholland v. Marion County Election Board*, 746 F.3d 811 (7th Cir. 2014), for their proposition that the

6

ERC process is too "advisory" to warrant *Younger* abstention. (Dkt. 14 at 11-13). There, the Seventh Circuit held that *Younger* abstention was not warranted where a county board had set up an initial meeting about a potential violation of the election code. *Mulholland*, 746 F. 3d at 816. There, too, the county board had subpoena powers and could make prosecutorial recommendations to a county attorney. *Id.* at 817. However, the Court finds that the *Mulholland* county proceeding differed in at least two important respects from the ERC proceeding, such that the ERC proceeding falls into the *Sprint* categories of proceedings warranting abstention consistent with the *Mulholland* decision. First, the *Mulholland* Court noted that the county board's authority to sanction was restricted to making a "recommendation of prosecution." *Id.* The ERC, by contrast, has authority in the statute to issue a sanction in the form of a reprimand to a candidate found to have violated the law, like the ethics commission at issue in *Middlesex*. As such, the ERC has greater independent authority to sanction a party than the county board at issue in *Mulholland*, and *Younger* abstention is warranted, as in *Middlesex*.

Second, it was central to the Court's decision not to find *Younger* abstention warranted in *Mulholland* that any enforcement proceedings were at an early stage, and that it was not clear what the county election board planned for its upcoming meeting and whether a formal enforcement process had in fact commenced. 746 F. 3d at 813. The *Mulholland* county election board had issued an order saying that it was "scheduling a meeting to hear from all interested persons" about the potential legal violation at issue, and not more. *Id.* at 815. The *Mulholland* Court reasoned that the vagueness and uncertainty as to what would happen at the meeting in question weighed against *Younger* abstention to the proceeding. *Id.* at 817. Here, by contrast, the ERC already held a preliminary hearing and found a likely violation of a campaign finance law, with a final hearing pending. Indeed, Austin's city code explains what happens at a final ERC hearing. *See* City Code § 2-7-45 (providing that final hearing will adjudicate "whether a violation within the jurisdiction of the

7

commission has occurred," based on a "preponderance of credible evidence in the record," and all "parties and witnesses shall make their statements under oath."). As such, the ERC proceeding here is further along and more defined than the *Mulholland* proceeding, making *Younger* abstention appropriate.

Plaintiffs also cite *Google, Inc.*, 822 F.3d at 223 and *La. Debating & Literary Ass'n v. City of New Orleans*, 42 F.3d 1483 (5th Cir.), cert. denied, 515 U.S. 1145 (1995), for the notion that the ERC's proceeding is too "advisory" to trigger *Younger* abstention because the city has not initiated a criminal prosecution. (Dkt. 16, 10-16). But as discussed above, the Court disagrees that ERC's role is advisory and finds that the ERC has independent authority to sanction violations. Regardless, *Google, Inc.*, is not comparable: there, the Court considered whether an administrative subpoena issued by the Mississippi Attorney General triggered *Younger* abstention and found it did not. *Google, Inc.*, 822 F. 3d at 223. Here, the ERC's actions are not merely civil investigative demands; they are undergoing an independent process to determine whether a legal violation has occurred and whether and how to sanction it. Similarly, in *Seattle Pac. Univ. v. Ferguson,* the Ninth Circuit distinguished a state attorney general's investigation from a proceeding before an election commission like the ERC, reasoning that "[a]n election commission investigation [is] exceptional and not comparable to a run-of-the-mill Attorney General investigation to determine if further action is warranted." 104 F.4th 50, 65 (9th Cir. 2024).

In sum, considering the ERC's role under Austin law, the power it has to adjudicate and sanction a potential campaign finance violation, and other applicable cases that have considered ethics and election commissions, the Court finds that the proceeding before the ERC was "initiated to sanction the party challenging the state action[] for some wrongful act," making it one of the categories of "exceptional" cases warranting the *Younger* abstention inquiry. *Sprint*, 571 U.S. at 78-79.

## B. Judicial or Quasi-Judicial State Proceeding

Having identified that the ERC proceeding falls into one of *Sprint*'s categories, the court turns to the three factors set forth in *Google, Inc.* to assess whether *Younger* abstention is appropriate, the first being whether the ERC has an ongoing proceeding before it that is "judicial or quasi-judicial" in nature. *Google, Inc.*, 822 F.3d at 222-23 (citing *Middlesex*, 457 U.S. at 432). Plaintiffs do not dispute that the ERC is currently considering whether Greco violated a campaign finance law, with a preliminary hearing having already occurred and another set for later in October. (*See* Dkt. 16). The court finds that the ERC's ongoing proceeding is "judicial or quasi-judicial" in nature. *Google, Inc.* 822 F.3d at 223. Austin city code sets out the steps of the ERC's enforcement proceedings: the ERC receives a complaint and determines its jurisdiction over the alleged violation; then, it sets a hearing with witnesses under oath; at that hearing, it determines whether a violation is reasonably likely to have occurred; if so, it sets a final hearing, may subpoena witnesses, conducts any investigation necessary using its powers of subpoena, considers evidence, and makes its findings. *See* Code § 2-7-45. As discussed above, when the ERC finds a violation, it has discretion to issue a formal reprimand, recommend that the city attorney initiate a criminal prosecution, or request that the city appoint a special prosecutor. *Id.*

Plaintiffs discuss *La. Debating* on this point, arguing that the ERC proceeding has not progressed far enough to warrant *Younger* abstention, (Dkt. 16-17), but in *La. Debating*, the local enforcement proceeding was at a different, earlier stage than the ERC proceeding at issue here. 42 F.3d 1483, 1490 (5th Cir. 1995). In *La. Debating*, a city commission had sent letters notifying the plaintiff of a charge but had not found a likely violation, and it had since paused proceedings. *Id.* The *La. Debating* Court also noted that *Younger* abstention was appropriate where proceedings like those in *Middlesex* are ongoing, where regulating agencies had "investigated the allegations, made determinations that probable cause existed, and served formal charges on the entities." *Id.* Here, the

9

ERC has taken the step of determining a likely violation and plans to proceed with a formal hearing on the allegations, so *Younger* abstention is appropriate consistent with the *La. Debating* case, as well. The Court finds the first factor is met.

### C. Implication of Important State Interests

To the second factor, the Court founds that the ERC's proceeding implicates important governmental interests. Article III, Section 8(A)(3) implicates campaign finance and ethics. The voters of Austin approved the measure in 1997 in response to public perceptions about the role of campaign contributions in Austin politics. *See Zimmerman v. City of Austin, Texas*, 881 F.3d 378, 382 (5th Cir. 2018). Without reaching the merits of the measure's constitutionality, the Court finds that these are important state interests. To argue that important state interests are not at issue, Plaintiffs restate their merits arguments that Article III, Section 8(A)(3) violates the First Amendment and reiterates that the ERC cannot bring a criminal prosecution. (Dkt. 2, at 17). But the merits of a potential constitutional claim do not factor into the *Younger* inquiry; considering the Plaintiffs' First Amendment arguments at this stage would collapse the *Younger* analysis into the merits. *See Greening v. Moran*, 953 F.2d 301, 304 (7th Cir. 1992) ("To say that abstention is in order then is to say that federal courts should not address the merits, period."). And for the reasons explained in Section (A), the Court also disagrees that the nature of the ERC's enforcement authority (i.e. that its independent authority to sanction does not include the power to initiate a criminal prosecution) makes the state interests at issue in this proceeding unimportant. In sum, important state interests—the civil enforcement of campaign finance regulation—are implicated, satisfying the second factor warranting *Younger* abstention.

### D. Opportunity to Raise the Federal Challenge

Finally, the third factor is whether the federal plaintiff has had an opportunity to raise their federal challenge in the state proceeding. To show *Younger* abstention is not warranted, a plaintiff

10

must show that there is no opportunity to present constitutional arguments in the proceedings below. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Bice v. La. Public Def. Svc.*, 677 F.3d 712, 719 (5th Cir. 2012). For purposes of *Younger* abstention, "state remedies are inadequate only where 'state law *clearly bars* the interposition of the constitutional claims.'" *Little v. Doguet*, 71 F.4th 340, 347 (5th Cir. 2023) (quoting *Moore v. Sims*, 442 U.S. 415, 425-426 (1979)) (emphasis in original). That includes showing that the ERC "could not construe its own statutory mandate in light of federal constitutional principles." *Ohio C.R. Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986). Moreover, to satisfy this factor, Greco would need to provide "authority indicating that" Texas's review "provision does not authorize judicial review of claims that agency action violates the United States Constitution." *Id.* The Court finds that Greco has not met this burden: He has adequate opportunity to present his constitutional arguments before the ERC or by proceeding in state court.

First, Greco cites no authority in either Austin or Texas law preventing him from presenting his First Amendment arguments before the ERC, and nothing suggests the ERC cannot construe its own statutory mandate considering federal constitutional principles. That could include the ERC deciding, in its discretion, not to sanction him for any violation it finds because of constitutional concerns. Greco's response, essentially, is that the ERC is an inadequate forum to present his argument because it is not a court, and any decision it made referencing his constitutional rights would not be binding on others who would potentially prosecute him, or precedential in other forums. (Dkt. 16 at 18-19). But the same would be true of similar local enforcement proceedings where courts have nevertheless found *Younger* abstention warranted. *Supra* n. 1 (collecting local

enforcement cases); *see also Bice*, 677 F.3d at 719 (municipal court offered adequate constitutional remedy for purposes of the *Younger* abstention analysis despite lacking statewide jurisdiction).

Also, Greco is permitted to proceed in state court with his constitutional challenge to the statute. The Texas Declaratory Judgments Act grants jurisdiction to Texas state courts to hear challenges to the validity of a municipal ordinance, *see* Tex. Civ. Prac. & Rem. Code ch. 37, and moreover Texas state courts have authority as courts of general jurisdiction to hear a constitutional claim. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). This avenue to raise his challenge suffices for purposes of *Younger* abstention. *See, e.g.*, *San José Silicon Valley Chamber of Commerce*, 546 F.3d at 1095; *Ohio C.R. Comm'n*, 477 U.S. at 629.

As such, Greco can present his constitutional arguments before the ERC or in state court forums, satisfying the third factor warranting *Younger* abstention.

### E. Lack of Other Factors Requiring this Court Not to Abstain

Federal courts may decline to abstain consistent with *Younger* where bad faith or harassment is alleged in the proceeding below, or where the state statute at issue is "flagrantly and patently" unconstitutional. *Google, Inc.*, 822 F.3d at 222. The Court notes that no party has argued either exception applies here, and the Court finds neither exception prevents it from abstaining.

## IV. CONCLUSION

Because the ERC proceeding in question is one meriting the *Younger* inquiry under *Sprint*, and all three factors articulated in *Google, Inc.* for the appropriateness of *Younger* abstention are satisfied, this Court will abstain from issuing a constitutional decision while Greco's case is pending before the ERC.[2]

For these reasons, **IT IS ORDERED** that Plaintiffs' motion for a preliminary injunction is **DENIED**. Defendants' Motion to Dismiss is **GRANTED** without prejudice.

**SIGNED** on October 11, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[2] Because the Court must dismiss a case where it finds *Younger* abstention warranted, *Gibson*, 411 U.S. 564 at 577, and because the *Younger* inquiry is independent of the standing inquiry, the merits of the constitutional claim, or the other preliminary injunction factors, *Daves*, 22 F.4th at 532, the Court does not reach the other issues briefed by the parties.